**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA
    *Plaintiff-Appellee,*

v.

DEON ANDRE CHARLES,
    *Defendant-Appellant.*

No. 08-50086

D.C. No.
2:07-cr-00614-
SJO-1

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
August 3, 2009—Pasadena, California

Filed September 9, 2009

Before: William C. Canby, Jr., Kim McLane Wardlaw, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

12991

COUNSEL

Benjamin Lee Coleman, Coleman & Balogh LLP, on behalf of defendant-appellant Deon Andre Charles.

E. Martin Estrada, Assistant United States Attorney, on behalf of plaintiff-appellee United States of America.

OPINION

CALLAHAN, Circuit Judge:

Deon Andre Charles appeals the sentence imposed after he pled guilty, pursuant to a plea agreement, to one count of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). In sentencing Charles, the district court applied the career offender enhancement in U.S. Sentencing Guidelines Manual § 4B1.1 ("§ 4B1.1") based, in part, on Charles's prior convictions for violations of California Health and Safety Code § 11351.5 ("§ 11351.5").[1] On

---

[1]Charles was sentenced on February 11, 2008. Therefore, references to the U.S. Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") are

appeal, Charles argues that the district court erred by finding that he was a career offender because a violation of § 11351.5 does not categorically constitute a "controlled substance offense" for the purposes of § 4B1.1. Reviewing Charles's sentence for plain error, we conclude that the district court did not plainly err in determining that Charles qualified as a career offender. Accordingly, we affirm Charles's sentence.[2]

I.

Police officers executed a search warrant at Charles's residence and found 80 grams of cocaine base and a handgun. Charles had previously been convicted of felony offenses, including three convictions under § 11351.5 for possession of a controlled substance for sale and one conviction under California Penal Code § 273.5 for willful infliction of corporal injury. Pursuant to a plea agreement drafted by the government, Charles pled guilty to one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and one count of possession of cocaine base with intent to distribute, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii).

Charles's plea agreement stipulated a total offense level of 32. It specifically noted that the stipulated offense level was calculated "absent a determination that the defendant is a career offender" and that Charles understood that his base offense level could be increased if he were found to be a

---

to the November 2007 Guidelines, which were in effect on the date of sentencing. *See* U.S.S.G. § 1B1.11(a); *United States v. Staten*, 466 F.3d 708, 712 n.2 (9th Cir. 2006).

[2]Because we conclude that Charles's challenge to the district court's application of the career offender enhancement fails, we do not reach his independent claim that the district court improperly calculated his criminal history points under the Guidelines, which resulted in an allegedly excessive criminal history category of VI. We need not address this argument because the career offender provision itself prescribes a criminal history category of VI. U.S.S.G. § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI.").

career offender under U.S.S.G. §§ 4B1.1 and 4B1.2 or an armed career criminal under U.S.S.G. § 4B1.4. The plea agreement contained no stipulation as to Charles's criminal history points or criminal history category. Additionally, Charles agreed to waive his right to appeal "any sentence imposed by the district court" provided that (a) the sentence imposed was within the statutory maximum and was constitutional, (b) the district court did not depart upward and it determined the total offense level to be 34 or below, and (c) the district court imposed a sentence within or below the range corresponding to the determined offense level and criminal history category. Notwithstanding these provisions, however, the plea agreement provided that Charles retained his right to appeal the district court's determination of his criminal history category.

In sentencing Charles, the district court found that his adjusted offense level would have been 29 without application of the career offender enhancement. However, the district court found that under § 4B1.1 Charles qualified as a career offender because he was at least eighteen years of age at the time of the instant offense, the instant offense was a felony and a "controlled substance offense," and Charles had at least two prior predicate felony convictions, three of which were for violations of § 11351.5.[3] Although the offense level for a career offender under § 4B1.1 would have been 37 in this case, *see* U.S.S.G. § 4B1.1(b), the district court calculated an offense level of 34, applying a three-point reduction for acceptance of responsibility. It also found that Charles's criminal history category was VI, as prescribed under the career

---

[3]In relevant part, § 4B1.1 states: "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

offender guideline.[4] *Id.* ("A career offender's criminal history category in every case under this subsection shall be Category VI.").

At the sentencing hearing, neither Charles nor his counsel objected to the district court's findings or to the facts or specific allegations in the presentence report ("PSR"). Although Charles did not object to the validity of the district court's career offender determination, he did urge the district court to exercise discretion and depart from the offense level of 37 premised on the career offender guideline by application of a "*Booker* analysis." In essence, Charles contended that the equities of his case supported a departure. Charles also argued that the district court should depart downward from an offense level of 34 because his criminal history was otherwise overstated and the government had not provided sufficient discovery to enable Charles to determine that the probation officer might find him to be a career offender. The district court declined to depart as requested and based Charles's sentence on an offense level of 34 and a criminal history category of VI.[5] It sentenced Charles to 120 months in prison for the conviction under 18 U.S.C. § 922(g)(1) and 204 months for the conviction under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), to be served concurrently.[6] Charles timely appeals.

---

[4]The district court also found that Charles would have a criminal history category of VI even absent application of the career offender enhancement.

[5]The sentencing range that corresponds with an offense level of 34 and a criminal history category of VI is 262 to 327 months. *See* U.S.S.G., Sentencing Table.

[6]The district court also sentenced Charles to five years of supervised release upon release from confinement and ordered him to pay a special assessment of $200.

## II.

Charles argues that a violation of § 11351.5 does not categorically constitute a "controlled substance offense" for purposes of the career offender enhancement and, therefore, the district court erred in applying § 4B1.1 to determine his sentence. Specifically, he contends that we should consider "widely accepted" common law defenses—here, the entrapment defense—when assessing whether a violation of § 11351.5 is categorically a controlled substance offense. Under this view, Charles maintains that a defendant can be convicted of a drug offense under California law on facts that would not sustain a federal drug conviction because the burdens of proof with respect to the entrapment defense differ under California and federal law.

Before addressing the merits of Charles's appeal, we consider the government's argument that Charles's appeal should be dismissed because of the appeal waiver contained in the plea agreement. We also consider whether Charles's claim on appeal should be reviewed de novo or for plain error.

### A.

The government contends that the appeal waiver contained in Charles's plea agreement bars this appeal. Paragraph 22 of the plea agreement provides:

> Defendant gives up the right to appeal any sentence imposed by the Court, and the manner in which the sentence is determined, provided that (a) the sentence is within the statutory maximum specified above and is constitutional, (b) the Court in determining the applicable guideline range does not depart upward in offense level or criminal history category and determines that the total offense level is 34 or below, and (c) the Court imposes a sentence within or below the range corresponding to the deter-

mined total offense level and criminal history cate-
gory . . . . Notwithstanding the foregoing, defendant
retains the ability to appeal the court's determination
of defendant's criminal history category and the con-
ditions of supervised release . . . .

The government contends that Charles should be bound by
the express appeal waiver because his sentence met all of the
stated conditions: the sentence was within the statutory maxi-
mum, did not constitute an upward departure, had a total
offense level of 34, and was within or below the correspond-
ing guideline range. Nevertheless, we conclude that the appeal
waiver does not warrant dismissal of Charles's appeal because
of an ambiguity contained therein.

We review de novo the validity of an appeal waiver. *United
States v. Buchanan*, 59 F.3d 914, 916 (9th Cir. 1995). We
have stated that "[a] defendant's waiver of his appellate rights
is enforceable if (1) the language of the waiver encompasses
his right to appeal on the grounds raised, and (2) the waiver
is knowingly and voluntarily made."[7] *United States v.
Jeronimo*, 398 F.3d 1149, 1154 (9th Cir. 2005). "In constru-
ing an agreement, [we] must determine what the defendant
reasonably understood to be the terms of the agreement when
he pleaded guilty." *United States v. De la Fuente*, 8 F.3d
1333, 1337 (9th Cir. 1993) (footnote omitted). The drafter of
the plea agreement, typically the government, is responsible
for any lack of clarity such that ambiguities are construed in
favor of the defendant. *See*, *e.g.*, *United States v. Cope*, 527
F.3d 944, 950 (9th Cir. 2008).

[1] We conclude that Charles did not waive his right to

---

[7]The parties do not dispute that Charles knowingly and voluntarily
entered into the plea agreement. Charles indicated at his change of plea
hearing that he understood the plea agreement and had entered into it vol-
untarily. This dispute centers on what exactly Charles waived through the
appeal waiver.

appeal the district court's career offender determination because the appeal waiver is ambiguous as to whether Charles could appeal that determination. There is no doubt that the plea agreement contemplated, and put Charles on notice, that the district court could apply a career offender enhancement, which carries a particular base offense level and criminal history category. *See* U.S.S.G 4B1.1(b). The agreement also indicated that Charles would give up his right to appeal "any" sentence if the sentence imposed by the district court met certain conditions. At the same time, however, the appeal waiver preserved Charles's right to appeal the district court's criminal history category assessment: "Notwithstanding the foregoing, defendant retains the ability to appeal the court's determination of defendant's criminal history category . . . ." The ambiguity arises because the career offender determination necessarily implicates a defendant's criminal history category, as it automatically assigns a criminal history category of VI. U.S.S.G. § 4B1.1(b). Despite knowingly and voluntarily entering the plea agreement, Charles reasonably could have believed that he retained his right to appeal his sentence to the extent that the district court determined he was a career offender. At a minimum, the appeal waiver is ambiguous with respect to Charles's ability to appeal the career offender determination, and we construe such an ambiguity in favor of Charles. *Cope*, 527 F.3d at 950. Accordingly, we conclude that Charles did not waive his right to appeal the district court's career offender determination, and that we may consider the merits of his appeal.

B.

We next consider whether we must review Charles's appeal de novo, as Charles argues, or for plain error. We conclude that Charles did not preserve for appeal his claim that he is not subject to the career offender enhancement and that, accordingly, plain error is the proper standard of review. *See United States v. Waknine*, 543 F.3d 546, 551 (9th Cir. 2008)

(reviewing for plain error objections to a sentence that the defendant failed to raise in the district court).

Following Charles's plea, a probation officer prepared a PSR that indicated Charles had previously been convicted of multiple controlled substance offenses and, as a result, qualified for a career offender enhancement. Charles did not contest the fact of these convictions or that they could serve as predicate offenses under the career offender guideline. Instead, he requested that the district court exercise discretion on the basis of the equities or mitigating circumstances of his case to depart from a sentence calculated under § 4B1.1. He also argued that he had entered the plea agreement with insufficient discovery to enable him to determine that he might be subject to the career offender enhancement.[8] He did not, however, object to the PSR's or the district court's findings on grounds that his convictions did not qualify him as a career offender. Accordingly, Charles did not preserve this claim. *See United States v. Rendon-Duarte*, 490 F.3d 1142, 1146 (9th Cir. 2007) ("Because [the defendant] did not challenge the PSR in the district court, we review the court's application of the Guidelines for plain error."); *United States v. Ortiz*, 362 F.3d 1274, 1278 (9th Cir. 2004) (reviewing a defendant's challenge to his sentence for plain error where he failed to object at sentencing on the grounds asserted on appeal).

Charles argues that he sufficiently preserved his claim because he requested that the district court "reject a guideline level 37 premised on [the] Career Offender [guideline]." Thus, he contends that we should review his sentencing challenge de novo in line with the statement in *United States v. Pallares-Galan* that "it is claims that are deemed waived or forfeited, not arguments." 359 F.3d 1088, 1095 (9th Cir. 2004). In *Pallares-Gallan*, the appellant had claimed before the district court that his prior state law conviction could not

---

[8]Charles does not claim that this discovery issue preserved his categorical approach argument for appeal.

constitute an aggravated felony for deportation purposes under the language of a federal statutory provision and thus argued that the district court did not need to reach the question of whether the state law conviction was an aggravated felony under the categorical approach. *Id.* at 1094. On appeal, Pallares-Galan again objected to the district court's determination that his prior conviction constituted an aggravated felony, but argued that the conviction did not qualify under the categorical approach. *Id.* We reviewed his claim de novo despite his failure to pursue the categorical approach argument below because it constituted an alternative argument in support of what had been his consistent claim from the outset: that his state law conviction could not qualify as an aggravated felony for deportation purposes. *Id.* at 1095. We also noted that Pallares-Galan had previously advised the district court of his categorical approach argument in a request to submit supplemental briefing. *Id.*

*Pallares-Galan* is inapposite. Here, Charles did not contest the fact that he qualified for the career offender enhancement, nor did he contest the district court's consideration of his prior convictions in determining whether he was a career offender under § 4B1.1. His claim was that the district court should exercise its discretion and depart from a career offender sentence because of the equities of his case. Thus, Charles has not offered an argument on appeal that is consistent with his claim generally; rather he offers an entirely new claim on appeal, and, therefore, this case is distinguishable from *Pallares-Galan*.

**[2]** This case is more closely analogous to *United States v. Pacheco-Zepeda*, 234 F.3d 411 (9th Cir. 2000). There, Pacheco-Zepeda previously had been convicted of several aggravated felonies. *Id.* at 413. The PSR considered these convictions in recommending a 16-level enhancement to his base offense level. *Id.* Pacheco-Zepeda did not contest the fact of his prior convictions or challenge their use to enhance his sentence. *Id.* Nonetheless, he argued generally before the dis-

trict court that the criminal history category set forth in the PSR "overstated the seriousness of his prior conduct." *Id.* On appeal, Pacheco-Zepeda challenged the use of his prior convictions for aggravated felonies to enhance his sentence, and we applied the plain error standard because he had "not challenge[d] the use of his prior aggravated felony convictions to enhance his sentence" before the district court. *Id.* Likewise, here, Charles did not challenge the use of his prior aggravated felony convictions to enhance his sentence. Thus, the plain error standard applies.

## C.

Turning to the merits, we review for plain error Charles's claim that the district court erred by determining that he was a career offender because a conviction under § 11351.5 is not categorically a controlled substance offense. "Under plain-error review, reversal is permitted only when there is (1) error that is (2) plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cruz*, 554 F.3d 840, 845 (9th Cir. 2009) (internal quotation marks omitted). To be plain, the error must be "clear" or "obvious." *United States v. Zalapa*, 509 F.3d 1060, 1064 (9th Cir. 2007). "An error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results." *United States v. De La Fuente*, 353 F.3d 766, 769 (9th Cir. 2003).

**[3]** In assessing whether a prior state law conviction qualifies as a controlled substance offense under the Guidelines, we employ the categorical approach from *Taylor v. United States*, 495 U.S. 575 (1990). *United States v. Crawford*, 520 F.3d 1072, 1078 (9th Cir. 2008). "Under the categorical approach a court must 'look only to the fact of conviction and the statutory definition of the prior offense' when determining whether the offense qualifies under a definition in the Guide-

lines." *Rendon-Duarte*, 490 F.3d at 1146 (quoting *Taylor*, 495 U.S. at 602).

**[4]** We hold that a prior conviction under § 11351.5 constitutes a controlled substance offense for the purpose of determining whether a defendant qualifies as a career offender under § 4B1.1. As related to § 4B1.1, the Guidelines define "controlled substance offense" as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). In relevant part, § 11351.5 states that "every person who possesses for sale or purchases for purposes of sale cocaine base . . . shall be punished by imprisonment in the state prison for a period of three, four, or five years." Cal. Health & Safety Code § 11351.5. A prior conviction under § 11351.5 categorically constitutes a controlled substance offense for the purposes of § 4B1.1 because (1) it is an offense under state law, (2) that is punishable by imprisonment for a term exceeding one year, and (3) that prohibits the distribution or dispensing of a controlled substance or the possession of a controlled substance with intent to distribute or dispense.

Although we have not previously held that a conviction under § 11351.5 is categorically a controlled substance offense under U.S.S.G. §§ 4B1.1 and 4B1.2(b), our case law supports that conclusion. We have held that a prior conviction under § 11351.5 categorically qualifies as a "drug trafficking offense" as defined under U.S.S.G. § 2L1.2.[9] *United States v.*

_____

[9]The Guidelines defines "drug trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export,

*Morales-Perez*, 467 F.3d 1219, 1223 (9th Cir. 2006). We have also held that the definitions of "controlled substance offense" under U.S.S.G. § 4B1.2 and "drug trafficking offense" under U.S.S.G. § 2L1.2 are identical except in two respects:

> (1) a prior conviction need only be punishable by a prison term exceeding one year to qualify as a controlled substance offense, whereas, to qualify as a drug trafficking offense, the prison sentence imposed for a prior conviction must exceed thirteen months and (2) a prior conviction under "local" law can qualify as a conviction for a drug trafficking offense, whereas to qualify as a conviction for a controlled substance offense, the conviction must be under state or federal law.

*United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1095 (9th Cir. 2007). Neither of these differences is material to this case because a conviction under § 11351.5 arises under state law and is punishable by a prison term in excess of thirteen months. *See* Cal. Health & Safety Code § 11351.5. Taken together, these cases support our conclusion that a conviction under § 11351.5 constitutes a "controlled substance offense" with respect to the career offender guideline.[10]

---

distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2 cmt. n.1(B)(iv).

[10]In addition, we held in *United States v. Sandoval-Venegas* that a prior conviction under California Health and Safety Code § 11359, which criminalizes the possession of marijuana for sale, categorically constitutes a controlled substance offense as defined under U.S.S.G. § 4B1.2(b). *See* 292 F.3d 1101, 1107 (9th Cir. 2002) ("California Health and Safety Code § 11359 comfortably fits within the Guidelines definition as a qualifying offense."). *Sandoval-Venegas*, which addressed a state statute that is substantially similar to § 11351.5, lends additional support to our conclusion with respect to § 11351.5.

**[5]** Charles nevertheless argues that courts must consider widely accepted common law defenses in determining whether a state law conviction is categorically a controlled substance offense. He argues that a conviction under § 11351.5 does not constitute a "controlled substance offense" under § 4B1.1 because § 11351.5 is categorically overbroad. Charles reasons that a defendant could be convicted under California law where he would not be convicted under federal law because the burdens of proof differ in relation to the defense of entrapment. Under California law, a defendant must prove entrapment by a preponderance of the evidence. *See People v. Mower*, 49 P.3d 1067, 1081 (Cal. 2002). Under federal law, the defendant has an initial burden to prove government inducement, but the government has the ultimate burden to prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by government agents. *See Jacobson v. United States*, 503 U.S. 540, 549 (1992); *United States v. Ross*, 372 F.3d 1097, 1108 (9th Cir. 2004). Charles contends that § 11351.5 is overbroad because of these differing burdens and that, therefore, a conviction under § 11351.5 cannot constitute a controlled substance offense.

Although he concedes it is not controlling here, Charles cites dicta from *United States v. Gomez-Mendez*, 486 F.3d 599 (9th Cir. 2007), in suggesting that we expand the categorical approach analysis to incorporate widely accepted defenses. In *Gomez-Mendez*, the defendant claimed that his state statutory rape conviction was not categorically a "crime of violence" because California did not recognize the affirmative defense that the defendant had a reasonable belief the victim was over sixteen. *Id.* at 603-04. We rejected the defendant's claim and reiterated that under *Taylor*'s categorical approach the analysis requires only that "the state crime must include all of the *elements* of the generic federal crime." *Id.* at 604 (citing *United States v. Asberry*, 394 F.3d 712, 715 (9th Cir. 2005) ("Under the categorical approach, we consider only the statutory elements of the offense . . . .")). Although

we assumed without deciding that *Taylor* also requires that a state crime incorporate "widely accepted affirmative defenses" under the categorical approach, we did so only to demonstrate that Gomez-Mendez's claim would fail even if the categorical approach were expanded. *Id.* Thus, in *Gomez-Mendez*, we applied the established categorical approach, which considers only the statutory elements of the state crime.

Charles also relies on the Eighth Circuit's decision in *United States v. Medina-Valencia*, 538 F.3d 831 (8th Cir. 2008), from which he draws a rule that "an assessment of affirmative defenses is required under the categorical approach." Charles misreads *Medina-Valencia*, which does not support Charles's contention. In *Medina-Valencia*, the court considered whether a prior conviction under a state statute criminalizing sexual contact with a person under the age of seventeen constituted a crime of violence that would support a sixteen-level increase under the Guidelines. *See id.* at 833. The state statute at issue included a subsection that expressly incorporated affirmative defenses to the crime. *Id.* at 834. The court considered this statutory defense in conducting its categorical approach analysis, stating that "the affirmative defense helps define what conduct is prohibited by the statute." *Id.* at 835. Contrary to Charles's assertion, the Eighth Circuit considered only the statutory definition of the state law offense as prescribed by *Taylor. See id.* It did not hold generally that affirmative defenses are to be considered under the categorical approach.

**[6]** Charles has not presented any controlling authority demonstrating that a court must consider widely accepted common law defenses when conducting a categorical approach analysis. Accordingly, we conclude that the district court did not plainly err. *See De La Fuente*, 353 F.3d at 769.

III.

We conclude that the appeal waiver in Charles's plea agreement does not bar his appeal. We further conclude that

the district court did not commit plain error in determining that Charles is a career offender under § 4B1.1 because a conviction under § 11351.5 is categorically a controlled substance offense under that guideline. Accordingly, Charles's sentence is **AFFIRMED**.